Mirza v College of Mount St. Vincent (2025 NY Slip Op 50342(U))

[*1]

Mirza v College of Mount St. Vincent

2025 NY Slip Op 50342(U)

Decided on March 18, 2025

Supreme Court, Bronx County

Hummel, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 18, 2025
Supreme Court, Bronx County

Rohma Mirza, Petitioner-Plaintiff,

against
College of Mount Saint Vincent, BOARD OF TRUSTEES, SUSAN BURNS, PRESIDENT, LYNNE A. BONGIOVANNI, PHD, DAVID LICHTENSTEIN, MD, ANTHONY J. GAROFALO, SONDRA MIDDLETON, and TSUI YUEN, Respondents-Defendants.

Index No. 805075/2024E

Plaintiffs
MICHAEL ANTHONY WOLF Firm Name: Diederich Law Office Address: 166 Franklin St., Tonawanda, NY 14150 Phone: 7163167166 Service E-mail: wolf&commat;diederichlaw.com
Defendant 
REBECCA KIM KIMURA Firm Name: Bond, Schoeneck & King, PLLC Address: 600 Third Avenue, New York, NY 10016 Phone: 646-253-2300 Service E-mail: rkimura&commat;bsk.com

Veronica G. Hummel, J.

In accordance with CPLR 2219(a), the decision herein is made upon consideration of all of the papers filed by the parties in NYSCEF in connection with petitioner-plaintiff ROHMA MIRZA'S hybrid petition/complaint and motion (Mot. Seq. 1) seeking, pursuant to Article 78 of the Civil Practice Law and Rules, a judgment and order: vacating respondent COLLEGE OF MOUNT SAINT VINCENT BOARD OF TRUSTEE'S ("the College") decision expelling Petitioner from the Physician Assistant Program ("the PA Program") as being arbitrary, capricious, and abuse of discretion and in violation of law; issuing an order of mandamus/injunction directing that Petitioner be reinstated to the PA Program; issuing an injunction requiring that the College "restore the status quo ante as of the day prior to" the [*2]dismissal; directing appropriate ancillary relief to make Petitioner whole for her expulsion from the PA Program; and granting Petitioner an award of costs and attorneys' fees and other equitable relief; and the motion of respondents the College, SUSAN R. BURNS, President, LYNNE A. BONGIOVANNI, PHD, DAVID LICHTENSTEIN, M.D., ANTHONY J. GAROFALO, SONDRA MIDDLETON, and TSUI YUEN (Mot. Seq. 2), made pursuant to CPLR 3211(a)(1) and 3211 (a)(7), seeking an order dismissing the hybrid Article 78 petition and complaint.
On August 26, 2024, the Court issued a decision denying Petitioner's motion for a temporary restraining order ("the TRO"). Oral argument on these motions was held before the Court on more than one occasion.
THE FACTS:
The College is a private educational institution located in Riverdale, NY
Petitioner is a first generation American citizen of Pakistani descent and practices the Muslim faith. Petitioner attended the New York City public schools. In March 2022, at the age of 20, Petitioner applied to the PA Program, and her application was accepted.
Petitioner entered the PA Program at the College in Fall 2022. Petitioner's group was the first class to start the new PA Program at the College.
Of import, in the profession of Physician Assistant, "PA-C" stands for "Physician Assistant — Certified". This designation indicates that an individual has successfully completed an accredited PA program, passed the PA National Certifying Examination ("PANCE"), and is issued a NCCPA board certification to practice as a PA.
It is undisputed that Petitioner, as a student, was not qualified to utilize the PA-C designation, and was permitted under the College guidelines to only sign documents as a "PA-S", standing for "student." As part of the College's program, PA students are made aware of the proper identification to use, and that they are not to misrepresent themselves as Physician Assistants or certified PA or PA-C, but must instead identify themselves as "PA Student" or "PA-S" to avoid confusion. Indeed, Petitioner admits this fact in her papers.
In any event, each student, including Petitioner, received and signed the College's Physician Assistant Program Student Handbook ("the Student Handbook"). The Student Handbook contains various policies including the College's Guidelines for Ethical Conduct and Behavior for the Physician Assistant Professional ("the Ethical Conduct Guidelines) which provide:
"Proper Identification Role and title confusion are common problems encountered in dealing with patients. Students should be aware of this problem and avoid misrepresentation by politely explaining their role and position and by wearing their ID badges/nameplates at all times. Students should use the designation "PA Student" following all notations in the charts or on medical forms. The abbreviation PA-S is less familiar and should be avoided to prevent title confusion . . .
Students shall not intentionally mislead others . . .
College of Mount Saint Vincent Physician Assistant Student Responsibilities: Unethical behavior is never appropriate . . . ."
The Student Handbook further provides, in the clinical rotations section, that:
"Identification. Physician assistant students should be identified by a clearly marked program identification badge while on clinical experiences at other institutions. At minimum, students will introduce themselves as physician assistant students and sign all documentation with their legible full signature followed by 'PA student'. Students should clearly display their current CMSV identification while on campus. At no time should a student, either by virtue of his or her skills or knowledge attained while progressing through the program, misrepresent him or herself as being other than a physician assistant student. While in the program, students may not use previously earned titles (i.e. RN, MD, DC, DPM, DDS, PhD, etc.) Failure to identify oneself appropriately or misrepresenting oneself will result in either academic probation or possible dismissal from the Program".(p.77)
In terms of the College's student disciplinary procedures, the Student Handbook, in the Academic Dismissal section, also specifically states that:
"In most cases, a student in danger of academic dismissal will have previously been placed on academic or professional probation, thus being well-aware of the consequences if academic or professional improvement is not forthcoming. There are times however when an individual may be dismissed from the PA program in light of the fact that they have never been placed on academic or professional probation in the past. Some of these circumstances are outlined below.
Circumstances that could lead to a student being dismissed from the . . . PA Program include but are not limited to . . . .
e. Committ[ing] a serious violation of the standards of professional conduct. Examples of conduct that will result in dismissal include, but are not limited to . . . i. Violated the academic honesty/integrity standards of the CMSV-PA Program . . . .
iv. Misrepresented one's physician assistant student status as, for example, a physician assistant, a nurse practitioner, a physician, or a medical resident" (p. 91-92).
Hence, a student may be dismissed from the program, without any previous violation or academic or profession probation, for misrepresenting one's physician assistant student status as, for example, a physician assistant, a nurse practitioner, a physician, or a medical resident. 
The College policy also incorporates by reference the American Academy of Physician Assistants Guidelines for Ethical Conduct for the Physician Assistant Profession ("AAPA Guidelines for Ethical Conduct"), which students are required to familiarize themselves with. These guidelines provide that "PAs should not misrepresent directly or indirectly, their skills, training, professional credentials, or identity. PAs should uphold the dignity of the PA profession and accept its ethical values." 
The Student Handbook thereafter outlines the process and procedures that are in place for an administrative review of an alleged ethical violation by a student. While discussed in further detail herein, the process includes a complaint, a review by an advisor board of professors, an appeal panel review, an appeal to the PA Director, and a final appeal to the Provost.
Petitioner acknowledges that, upon commencing the program, she received the Student Handbook and agreed to abide by its terms.
On September 1, 2023, one year into the curriculum[FN1]
, Petitioner provided a letter of recommendation for her friend in support of the friend's application to the PA Program, as well as to physician assistant programs at other schools, through the Centralized Application Service for Physician Assistants ("CASPA") Portal ("the Recommendation Letter").
It is undisputed that Petitioner signed her name to the Recommendation Letter as "Rohma Mirza PA-C".
Upon reviewing the Recommendation Letter, college faculty representatives (respondent Dr. Yuen and Dr. Felton), referred the matter for review to the first level advisor disciplinary panel, the Professional Conduct Review Committee ("PCRC"), as a possible violation of the Ethical Conduct Guidelines. Respondents Yuen and Felton are professional, certified Physician Assistants.
According to the College's written policy and procedures, the PCRC is designed to assess and review the actions of a student within the PA Program. The PCRC consists of five (5) members drawn from the ranks of full-time and/or part-time principal and adjunct faculty members of the PA Program and is chaired by a principal faculty member chosen by the program director. Respondent Yuen was the PCRC Chair in 2023 and neither the Director of the PA Program nor the Provost had any involvement in the PCRC's initial review process.
It is undisputed that, under the written college procedures, a student has the opportunity to present evidence and to defend themselves against the alleged misconduct charges at the PCRC hearing. Students may also present additional evidence after the meeting. 
The College procedures do not require, however, that a student be provided prior written notice of the charges to be discussed at the PCRC meeting. Advisors to the student, including attorneys, are not permitted to participate in the PCRC meeting.
After the PCRC disciplinary meeting is held, the PCRC makes a recommendation to the Academic Progress Committee ("APC") regarding the PCRC's findings and, if appropriate, suggests potential disciplinary actions.
Approximately three weeks after submitting the Letter of Recommendation, on September 28, 2023, Petitioner was advised that a PCRC hearing was to be conducted ("Email Notice of PCRC Hearing"). The Email Notice of the PCRC Hearing informed Petitioner that the hearing would take place the next day, on September 29, 2023, and provided a Zoom link for the meeting. The email gives no information as to the issue to be discussed at the PCRC meeting beyond stating:
"You have been scheduled to attend a meeting with the [PCRC] tomorrow Sept 29th at 12:30 pm. The meeting will take place via zoom, the link is below. This meeting is [*3]mandatory. Please confirm that you received this email".
Petitioner confirmed that she would attend the PCRC meeting.
On September 29, 2023, the PCRC meeting was held. An audio recording of the meeting is submitted on the record. The five (5) faculty members in attendance at the PCRC committee meeting were respondent Yuen, respondent Middleton, Tiburzi, Kamel, and Felton. Marien Fabel was the administrative recorder. Petitioner attended the meeting. The faculty members are expert, certified Physician Assistants.
At the PCRC meeting, Petitioner was informed that she was being asked about the Recommendation Letter. The letter was put on the screen and the "PA-C" signature, the "C" standing for certified, was pointed out to the student. Petitioner stated that signing "PA-C" was serious and might have been a typo or a mistake, and that she was unsure whether she was permitted to even write a recommendation letter. The meeting concluded and Petitioner was directed to be more careful with her signature.
In the Petition, Petitioner now alleges that "she has no recollection as to why [the letter] included 'PA-C'", "perhaps [it] was on the template she used", and she "might have had a momentary lapse in memory and thought 'PA-C' stood for 'PA-Candidate.' " It is undisputed that these alleged justifications were not raised at the PCRC meeting.
In addition, in the Petition, Petitioner alleges that any reviewer of this letter would recognize that it is written by a student, not a licensed physician assistant, both from the text in the body of the letter and the fact that the CASPA "Evaluations" form identifies Petitioner as a "Student" at the College. Petitioner further alleges, "upon information and belief", that this meeting was arranged by respondents Middleton and Yuen as a sham hearing, "as they had already conspired between themselves that they would find Plaintiff guilty of professional misconduct and cause her dismissal from the PA Program and expulsion from [the College]".
In response, the College alleges that the PCRC members concluded that, after attempting to explain to Petitioner the seriousness of the signature misrepresentation, Petitioner did not appear to understand the severity of her actions. Respondent Yuen submits an affidavit stating that she believed that Petitioner did not understand the seriousness of her actions, the committee unanimously found that the signature, even by mistake, was a violation of the Rules of Ethic Conduct, and Petitioner's reactions showed a "serious lack of professionalism" for Petitioner's level in the PA program. Respondent Yuen states that Felton[FN2]
 was adamant that that Petitioner be dismissed. Petitioner's religion and natural origin were never mentioned.
By affidavit, respondent Middleton avers that Petitioner admitted to the signature initially without qualification or excuse. "After I and the other PCRC members expressed surprise regarding Petitioner's admission, Plaintiff backtracked and stated that [the signature] may have been a typo or a mistake. Nevertheless, even after attempting to explain to Plaintiff the seriousness of such a misrepresentation, Plaintiff did not appear to understand the severity of her actions". Plaintiff's religion and national origin were not mentioned during the meeting and based upon the severity of Petitioner's actions and lack of professionalism, the PCRC recommended dismissal.
Hence, after deliberation, the PCRC found that Petitioner's conduct violated the Ethical Conduct Guidelines, and unanimously recommended that Petitioner be dismissed from the PA Program.
The recommendation of dismissal was then referred to the APC committee, which is empowered to make the actual determination as to the charges and the potential sanction of academic probation or dismissal. The APC reviews the available evidence and the recommendation of the PCRC, and makes its own determination as to whether to issue discipline and is not bound by the recommendation of the PCRC. The PA Program Director and the Provost have no involvement in the APC review process. The chair of the APC was respondent Middleton. 
It is not clear when Petitioner was informed of the PCRC's decision to recommend expulsion.
Five days after the PCRC hearing, in the late evening at 8:32 p.m., on October 4, 2023, respondent Yuen sent a Zoom invitation to Petitioner for the APC Meeting ("the APC Hearing Notice Email"). The APC Hearing was scheduled for the next day, October 5, 2023, at 4:00 p.m.The APC Committee consisted of nine (9) faculty members. Three (3) of the APC Committee members (respondent Middleton, respondent Yuen, and Felton), had served on the PCRC committee. The remaining six (6) Physician Assistant certified faculty members were unconnected to the PCRC committee and its conclusions.
Petitioner failed to appear at the APC Hearing. Under the College's written procedures, although students are invited to participate in the APC hearing, there is no requirement that a student under investigation be present in order for the meeting to proceed. The rule regarding APC hearings provides that "It is recommended, however not required, for the student to attend the APC meeting." When a student does not appear for the student's APC hearing, the APC committee does not re-schedule the meeting but instead proceeds to issue a determination based on the record. The APC Committee therefore proceeded in Petitioner's absence.
Hence, on October 5, 2023, the APC Hearing was held regarding the Recommendation Letter and the PCRC recommendation of dismissal without Petitioner. 
According to attendee respondents Yuen and Middleton, during the APC Hearing, the nine (9) faculty members discussed Petitioner's admitted conduct as well as her explanation at length and evaluated the severity of the misrepresentation as well as the ways in which it could be remediated. The consensus between the APC members was that there was no adequate form of discipline for the conduct, short of dismissal. Among other things, the APC committee discussed that the misrepresentation was possibly a violation of relevant law (NY EDUC. LAW § 6543), and how it could impact Petitioner's ability to ever become certified by the NACCPA. Given the severity of the offense and Petitioner's perceived lack of professionalism, all nine (9) members of the APC committee voted in favor of dismissal. Petitioner's religion and national origin were not mentioned at all during the APC committee discussions, or at any point during the disciplinary proceedings.
The day after the completion of the October 5, 2023, APC hearing, at 12:10 p.m. on October 6, 2023, Petitioner responded to the APC Hearing Notice Email (dated October 4, 2023) by writing:
"Good morning, I apologize, I did not see this email. Please let me know if you would like to reschedule. Rohma Mirza"("Petitioner's Reschedule Email")
Three days later, on October 9, 2023, Middleton forwarded a letter to Petitioner [*4]informing her that she had been dismissed from the PA Program ("the APC Decision") . The APC Decision states:
"This is a follow up to the [APC] meeting held on October 5, 2023 after your [PCRC] meeting held on September 27, 2023, for which you were present. We regret to inform you that your current enrollment in the PA Program has been terminated and will be effective immediately for the following reason:
• Misrepresentation as a graduate, certified PA
You have the right to appeal this decision to the PA Program Director, in writing, within seven business days after receiving the APC's decision, which would be October 18, 2023. Please refer to your student handbook/college website for the full appeal process."
Petitioner alleges in the Petition that the APC's refusal to adjourn the hearing or to respond to the email requesting such is further evidence of unlawful intent and bad faith by the College and respondents. While not denying that the APC was not required under the rules to reopen and reschedule the completed hearing or to even to respond to Petitioner's request for such action under the disciplinary procedures, Petitioner alleges that the failure to provide Petitioner with notice of the accusation against her in advance of the September 29th meeting, and the refusal of the APC to reopen and reschedule its hearing is evidence that the College's decision to expel Petitioner was predetermined and based on discriminatory motivations.
The day after receiving the decision, on October 10, 2023, Petitioner appealed the APC Decision by an email to the PA Program Director (respondent[FN3]
 Garofalo) ("Appeal of APC Decision"). In the appeal, Petitioner expressed regret for her mistake, acknowledged the seriousness of the error, and outlined the extensive steps she had taken to correct the error.
The PA Program Director responded to the appeal email on the same day. He reiterated that as the Program Director, he was removed from all discussions and decisions rendered by the committees while the process is proceeding. His role in the matter, once an appeal is requested, is to review all the evidence, committee meeting minutes, discussions between committee members, as well as the student's responses and then review the final decision rendered and to either uphold or alter the decision of the APC. He stated that he would now review all the documentation and would make a decision regarding the dismissal recommendation by the end of this week.
Five days later, on October 15, 2023, the PA Program Director issued a decision upholding the dismissal determination ("The PA Program Director Decision"). The PA Program Director wrote that he completed an exhaustive review of the reports furnished by the PCRC and APC Committees. These reports included statements made by Petitioner outlining the rationale for her actions.
The PA Program Director held:
"I regret to inform you that I have upheld the dismissal decision rendered on October 9, 2023, by the [APC] . . . The rationale for this decision is based on the following factors:
• Misrepresentation as a graduate of a Physician Assistant Program
• Misrepresentation as a nationally board-certified Physician Assistant evidenced by signing your name to a letter of reference within the CASPA application process as a [*5]Physician Assistant Certified (PA-C).
• Failure to comply with the College of Mount Saint Vincent, Physician Assistant Program Policy and Procedure Manual, specifically CMSV 317-Academic Dismissal "Section-1, sub-section E, subparagraph IV" which specifically states: Misrepresented one's physician assistant student status as, for example, a physician assistant, a nurse practitioner, a physician, or a medical resident.
Under this final decision, you no longer may attend any classes aligned with the CMSV Physician Assistant Program effective October 15, 2023. You have the right to appeal my decision directly to the Provost of [the College]."
In an affidavit submitted on the motion, the respondent PA Program Director reiterates the findings set forth in the decision and avers that Petitioner was aware of the requirement to identify herself as PA-S, rather than PA-C, as indicated in prior communications in which she identified herself as "PA-S" after her name. The PA Program Director further avers that "I did not consider Plaintiff's religion or national origin in making my decision" and that he has no bias against Muslim students or students that identify with any other religion. He states that "I also do not have a bias against minority students, and most of the students in the PA Program are from diverse backgrounds".
In contrast, Petitioner now asserts in this proceeding that the PA Program Director undertook no exhaustive review, but merely "rubber-stamped" the prior determination, and that the stated basis for his decision was "unfounded and demonstrably false."
Five days later, on October 24, 2023, Petitioner appealed the PA Program Director Decision to the Provost (respondent Bongiovanni) through her attorney, the Rosenberg Law Firm ("Appeal of the PA Program Director Decision"). Petitioner argued that the relevant signature was the result of a "clerical oversight" and Petitioner's signature as "PA-C" was inadvertent. Petitioner stated in the appeal letter that:
"Upon the realization of this mistake, [Petitioner and her friend] took prompt corrective action. [Petitioner's friend], displaying a sense of responsibility, dispatched corrective emails to all the institutions to which she had applied, ensuring they were aware of the genuine nature of the error. For your reference, the attached CASP Application clearly denotes Ms. Mirza's status as a student, thereby substantiating our claim that the error was unintentional and arose from a mere oversight. This underscores the inadvertent nature of the mistake, which we believe merits consideration and understanding."
One month later, on November 29, 2023, the Provost forwarded a decision to Petitioner rejecting her appeal ("the Provost Decision"). In the decision letter, the Provost stated:
"I have thoroughly considered the appeal that your attorney filed on your behalf regarding the Physician Assistant Academic Performance Committee's decision to dismiss you from the program for misrepresenting your credentials.
After examining the situation, including your argument that a clerical error led you to sign the letter as "PA-C" even though you submitted the document as a student, I have decided to reject your appeal.
When making this decision, I considered the fact that misrepresenting the credentials of a licensed health care provider is a severe breach of ethical and legal obligations, even if done inadvertently. The PA program makes all students acutely aware of the gravity of this type of infraction. Having committed this misrepresentation may impact your ability [*6]to obtain licensure after graduation, which is something that the College must consider as it allocates limited program openings to the students who are most likely to continue on to a successful career as a practitioner. I wish you good luck in your future endeavors."
By affidavit, the Provost reiterates the above cited justifications for this decision and further states that:
"With regard to my concern about Plaintiff's ability to obtain licensure, it was not meant as a threat to disclose her conduct to third parties, but solely a recognition that Plaintiff herself will have to report her disciplinary actions including the reasons for her dismissal from [the PA Program], when she applies for any licensure, including from the [NCCPA], which may decline to grant licensure to Plaintiff. Moreover, I have not, nor am I aware that anyone in my office or at my direction has reported or threatened to report Plaintiff's misconduct to the NCCPA or any similar PA licensing agency. However, to the extent that this information is required to be reported, UMSV would comply with any legal requirements".
Hence, Petitioner was dismissed from the program as of October 15, 2023. This date was eight weeks short of her, upon completion of examinations, moving on to Clinical Instruction.
The Hybrid Proceeding
Petitioner commenced this Hybrid Acton on March 26, 2024, just short of four months after the Provost Decision was issued on November 29, 2023. The Petition alleges Breach of Contract (the First Cause of Action), a Conspiracy to Violate Civil Rights under 42 USC §1985 and §1986 and Interference with Contract under 42 USC §1981 (the Second Cause of Action), Prima Facie Tort and Restraint of Trade (the Third Cause of Action), Interference with Contractual Relations (the Fourth Cause of Action); Violation of New York City Human Rights Law (the Fifth Cause of Action); Defamation (the Sixth Cause of Action); Article 78 — Claim for Mandamus/Injunctive Relief (the Seventh Cause of Action); and Declaratory Relief (the Eighth Cause of Action) .
In the Hybrid Petition/Complaint, Petitioner alleges that she is a Pakistani-American and practices the Muslim faith. Plaintiff alleges that she has seen the College treat PA students differently based upon their race, national origin and religion, and specifically, Pakistani American students were treated differently than other students in terms and conditions of their enrollment and studies than other students. Petitioner alleges that she was the vice-president of her class's Student Council, which consisted of four members, three of whom were Muslim.
Petitioner asserts that she was targeted for adverse treatment and the "scorn of" respondent Middleton because she spoke out regarding unfair practices for her classmates after becoming class vice-president. Petitioner clams that, out of her original class of 55 PA students, 8 failed to progress, and 2 of the 8 who were white students were given an opportunity to return to class the next year, while the other 6 were not given the similar opportunity but were required to attend additional remedial classes at additional cost.
Petitioner also alleges that in October 2023, after Petitioner was dismissed from the PA Program, four Bangledeshi and Southern Asian colleagues were held back from clinical instruction and put on probation requiring six weeks of remedial instruction. Petitioner believes respondent Middleton supervised these students.
Petitioner also alleges that respondent Middleton "disdained Plaintiff" for her criticism of the PA Program grading practices as being unfair and requiring Southwest Asian/Muslim students to undergo "remedial" instruction that delayed their academic progress. Petitioner further alleges that respondent Middleton had a "negative attitude" regarding people of Pakistani descent and Muslim faith and "evidenced anti-Pakistani/Muslim sentiment," made "unsolicited, offensive comments" to students relating to Muslims, the Middle East, and Southwest Asia." Specifically, Petitioner alleges that respondent Middleton discussed her travel to Israel and made comments suggesting that Palestine should belong to Israel, as well as "a seemingly derogatory comment" about a Palestinian student wearing a culturally-Palestinian shirt. Petitioner alleges that respondent Middleton "took issue" with Muslim students' request that full contact medical training exams be performed by same-gendered classmates, and made comments about the requests and intentionally paired Muslim female students with men, "or allowed such to occur."
Petitioner alleges that she "believes" respondent Middleton was the central faculty member who insisted on Petitioner's dismissal from the PA Program and enlisted the aid of other faculty members to expel Petitioner.
As for relief [Mot. Seq. 1], Petitioner seeks:
"a. A declaration under CPLR Article 78 stating that Defendants' expulsion of Plaintiff from the CMSV PA Program was arbitrary, capricious and an abuse of discretion;
b. An affirmative injunction directing Defendant CMSV to reinstate Plaintiff to the school's PA program, on terms that are just;
c. award of compensatory damages for Plaintiff's economic and non-economic loss caused by Defendants' unlawful expulsion of Plaintiff from the CMSV PA Program;
d. An award of punitive damages,
e. An award of reasonable attorney's fees, and the costs of this action;
f. Such other and further relief as this Court may deem just and proper."
In the proceeding, Petitioner submits a Petition, a Notice of Petition, a Complaint, the Recommendation Letter, the Email Notice of the PCRC Meeting, the Email Notice of APC Hearing, the APC Decision, the Appeal of the APC Decision, the PA Program Director Decision, the Appeal of the PA Program Director Decision, the Provost's Decision, and a memorandum of law in support of the petition and motion.
In opposition, respondents cross-move [Mot. Seq. 2] pursuant to CPLR 3211(a)(7) and (a)(1) to dismiss the Petition/Complaint. In support of the cross-motion, the College submits duplicate documents, a notice of motion, affidavits from Garofalo, Yuen, Middleton, and Bongiovanni, the Student Handbook, additional emails, and a memorandum of law.
Petitioner submits an affirmation in reply, and opposes the cross-motion to dismiss. The College also submits a reply. Petitioner thereafter submitted letters with regards to motion 1 and 2 concerning the "limited scope of Article 78 Claim".
ANALYSIS
The Court notes that case law reflects the policy that the administrative decisions of educational institutions involve the exercise of highly specialized professional judgment and that these institutions are, for the most part, better suited to make relatively final decisions [*7]concerning wholly internal matters. Maas v Cornell University, 94 NY2d 87 (1999); see, Matter of Olsson v Board of Higher Educ., 49 NY2d 408 (1980). This jurisprudential guidepost stems from the belief that these institutions are peculiarly capable of making the decisions which are appropriate and necessary to their continued existence. Maas v Cornell University, supra. Accordingly, courts retain a restricted role in dealing with controversies involving colleges. Id.
Article 78- Causes of action for Mandamus/Injunction Relief (Cause of Action Seven and Eight)
Specifically, Petitioner claims that the decision to expel her from the PA Program was arbitrary and capricious and she seeks relief under CPLR Article 78 because: (1) the College ignored her explanation that her use of "PA-C" was unintentional and a mere oversight, purportedly caused no harm, and was promptly rectified; and (2) the College failed to provide Petitioner with due process, as contractually promised, including notifying Petitioner of, and providing an in-person hearing allowing her to argue her defense. In Petitioner's memorandum of law, Petitioner further argues that she was denied due process because she was not advised of the accusation made against her in advance of the PCRC meeting and the APC hearing was not reopened and rescheduled when she failed to appear. In sum, in the pleadings and motion papers, Petitioner alleges that the College, a private university, in reaching its decision in the disciplinary matter: (1) failed to substantially comply with its procedures; (2) made a determination that lacks a rational basis; and (3) imposed a penalty so excessive that it shocks one's sense of fairness[FN4]
.
In opposition and in support of the motion to dismiss, the College argues that the Article 78 petition must be dismissed because the decision to expel Petitioner was not arbitrary and capricious, Petitioner waived any due process claims, the College conformed to its policies and procedures and as such due process was provided, and the dismissal sanction was not an abuse of discretion. Furthermore, in the event that this Court grants the Article 78 Petition and annuls the determination to expel Petitioner from the PA Program, the appropriate remedy is to remit the disciplinary matter to the College for a rehearing that cures any deficiencies.
Of import to the legal analysis herein is the fact that Petitioner's repeated declaration that her misidentification of her certification status in the Recommendation Letter was the sole ground for the expulsion and that the PA-C signature was a simple error that the College was required to forgive, misstates the full context of the College's disciplinary determination. The record establishes that the disciplinary decision reached by the two fully staffed expert committees, the director of the program, and the Provost was not only based on the PA-C signature, but was also founded on the experts' determination that Petitioner's responses to learning of the connected ethical infraction and failure to appear at the appeal demonstrated that Petitioner lacked the necessary, expected level of professionalism to comprehend the seriousness of violating a rule of ethics. In addition, the determination was based in part on the likelihood [*8]that Petitioner's eligibility to become licensed upon graduation was severely damage by the underlying violation.
Furthermore, in determining the legal issues raised herein, it is also important to note that the College is a private university. It is well settled that the relationship between a private university and its students is essentially a private one such that, absent some showing of State involvement, its disciplinary proceedings do not implicate the full panoply of due process guarantees. Matter of Doe 1 v Syracuse University, 188 AD3d 1570 (4th Dept 2020); Matter of A.E. v Hamilton College, 173 AD3d 1753 (4th Dept 2019); see Matter of Kickertz v New York University, 25 NY3d 942 (2015). In Article 78 proceedings to review disciplinary action, therefore, the courts have a very restricted role in reviewing determinations of private colleges and universities. Maas v Cornell University, supra; see Matter of Powers v St. John's University School of Law, 25 NY3d 210, 216 (2015); Matter of Aryeh v St. John's University, 154 AD3d 747 (2d Dept 2017). Hence, a determination will not be disturbed unless a school acts arbitrarily and not in the exercise of its honest discretion, it fails to abide by its own rules or imposes a penalty so excessive that it shocks one's sense of fairness. Matter of Powers v St. John's University School of Law, supra; Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 234 (1974); Storino v New York University, 193 AD3d 436 (1st Dept 2021); Matter of Aryeh v St. John's University, supra.
Due Process Claims
A private university is only required to follow its own rules and there is no basis for an action based on constitutional principles. see Matter of Doe v Skidmore College, 152 AD3d 932 (3d Dept 2017); Matter of Beilis v Albany Medical College of Union University, 136 AD2d 42 (3d Dept 1998). Hence, as stated previously, a student subject to disciplinary action at a private university is not entitled to the full panoply of due process rights. Matter of Kickertz v New York University, supra; Matter of Doe 1 v Syracuse University, supra; Matter of A.E. v Hamilton College, supra; Matter of Ebert v Yeshiva University, 28 AD3d 315, 315 (1st Dept 2006).
When a university has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion, however, that procedure must be substantially observed. Matter of Kickertz v New York University, supra; Tedeschi v Wagner Coll., 49 NY2d 652 (1980); Matter of Doe v Trustees of Union College, 195 AD3d 1216 (3d Dept 2021). Judicial scrutiny of the determination of disciplinary matters between a university and its student is limited to determining whether the university substantially adhered to its own published rules and guidelines for disciplinary proceedings so as to ascertain whether its actions were arbitrary or capricious. Storino v New York University, supra; Matter of Doe 1 v Syracuse University, supra; Matter of Al-Khadra v Syracuse Univ., 291 AD2d 865 (4th Dept 2002); Matter of A.E. v. Hamilton College, supra. Perfect adherence to every procedural requirement is not necessary to demonstrate substantial compliance. Matter of Doe 1 v Syracuse University, supra; Matter of Doe v Skidmore College, 152 AD3d 932 (3d Dept 2017); Matter of Ebert v Yeshiva University, supra. The College need only ensure that its published rules are "substantially observed." Matter of Kickertz v New York University, supra; see Storino v New York University, supra; Matter of Quercia v New York University, 41 AD3d 295 (1st Dept 2007).
Furthermore, the court has no discretionary authority to review a claim that a college failed to adhere to its procedures unless the contention is preserved for review in the underlying [*9]proceeding. Matter of McGuinness v Waters, 209 AD3d 436 (1st Dept 2022); Matter of Neelman v State University at Buffalo, 192 AD3d 1621 (4th Dept 2021).
As such, in this action, Petitioner's due process rights are set forth in the Student Handbook and the College merely must have adhered to the rules, rights, and procedures set forth in that publication. Matter of Aryeh v St. John's University, 154 AD3d 747 (2d Dept 2017); Quercia v New York University, supra. Thus, in order to prevail on this Article 78 Petition, Petitioner must show that the College failed to substantially act in accordance with its own policies and procedures.
Applying these legal principles to the undisputed facts here, Petitioner's claim that the College failed to provide Petitioner with adequate due process is dismissed. Firstly, the argument was not preserved in the underlying proceedings. As such, the court is without discretion to review the contention and it is deemed waived. Matter of McGuinness v Waters, supra. Furthermore, Petitioner fails to set forth any specific procedure or rule that the College failed to complied with and does not dispute that the subject hearings and appeals were conducted in accordance with the exact language of the College's written disciplinary policy. Matter of Bondalapati v Columbia University, 170 AD3d 489 (1st Dept 2019).
In any event, the College demonstrates that its published rules were substantially observed, and Petitioner was afforded all required due process. Id. In terms of Petitioner's claim that she did not receive sufficient advanced notice of the PCRC meeting, this contention is contradicted by the uncontroverted evidence that, in accordance with the College's procedures, Petitioner was notified of the hearing via email the day before the hearing. Furthermore, the College's refusal to reopen and reschedule the APC meeting that Petitioner failed to appear for was undisputedly in accordance with the College's procedures and there is no right to an automatic reopening of hearing that a student failed to attend under the rules. Contrary to Petitioner's assertion, therefore, the record establishes that the College substantially complied with its disciplinary procedures and the appeal process as outlined in the Student Handbook. Nor do Petitioner's conclusory allegations that bias somehow played a role in the ultimate outcome generate a question of fact as to whether the exact procedures were followed. See Razzano v Resenburg-Speonk UFSC, 162 AD3d 1043 (2d Dept 2018).
Here, Petitioner received multiple layers of administrative review by thirteen (13) expert faculty/administrative members and opportunities to submit evidence in support of her appeals. W.O. v New York University, 226 AD3d 577 (1st Dept 2024); Matter of Bondalapati v Columbia University, supra. Thus, Petitioner was given all the due process to which she was entitled and the claims based on due process are dismissed. W.O. v New York University, supra; Matter of Doe 1 v Syracuse University, supra; Matter of Al-Khadra v Syracuse University, 291 AD2d 865 (4th Dept 2002); Matter of Doe v Skidmore College, supra; Matter of A.E. v. Hamilton College, supra; see Matter of Kickertz v New York University, supra; Quercia v New York University, supra.
Arbitrary and capricious.
Generally, an administrative determination is arbitrary and capricious when it is without sound basis in reason and is taken without regard to the facts rendering the determination to be without rational basis. Pell v Board of Education of Union Free School District No.1, supra. The determination must be supported by such relevant proof as a reasonable mind may accept as adequate to support the conclusion. 300 Gramatan Avenue Associates v State Division of Human [*10]Rights, 45 NY2d 176 (1978); Matter of Castiglia v. County of Ontario, 140 AD3d 1648 (4th Dept 2016). Hence, where a university, in suspending a student, acts within its jurisdiction, not arbitrarily but in the exercise of an honest discretion based on facts within its knowledge that justify the exercise of discretion, a court may not review the exercise of its discretion. Matter of Doe 1 v Syracuse University, supra; Matter of Ponichtera v State University of NY Buffalo, 149 AD3d 1565 (4th Dept 2017).
Based on the record, the Court concludes that there is nothing arbitrary or capricious about the disciplinary ruling that was rendered by the College after four levels of disciplinary review by various facility members were completed. Here, the College followed its own rules, exercised honest discretion, and articulated a factual basis grounded in the facts that were presented during the proceedings to make the finding that was reached. Matter of Doe v Syracuse University, supra; see Bilicki v Syracuse University, 67 Misc 3d 1230 (Sup. Ct. Onondaga County 2019), affirmed, 181 AD3d 1188 (4th Dept 2020).
To the extent that Petitioner seems to contend that the College's disciplinary determination was arbitrary because there was no rational basis on which to conclude that Petitioner's conduct was a violation of the relevant ethics code, this is rejected as Petitioner admits to the authoring the relevant letter and violating the code. The Student Handbook clearly states that the misrepresentation of certification is a serious violation of ethics which is subject to expulsion, and the undisputed fact is that Petitioner, whether or not with intent, did so. The College's decision was not plainly and totally irrational as it is based on the undisputed facts relating to Petitioner's conduct, and therefore the conclusion was not arbitrary. See Matter of Doe 1 v Syracuse University, supra, James L. v Starpoint Central School District, 229 AD3d 1344 (4th Dept 2024).
Furthermore, mere vague speculative allegations that Petitioner's excuse was ignored by the numerous, some unnamed, professional faculty members that served on the committees and the appeals and that their findings were based on bias are inadequate to show arbitrariness on the College's behalf. Matter of 1616 Second Ave. Rest. v New York State Liq. Auth., 75 NY2d 158 910 (1990); Matter of Bruso v Clinton County, 139 AD3d 1169 (3d Dept 2016). In light of the fact that over a dozen professional expert faculty/administrative members participated in the four level review process, the broad claim that one or two biased faculty members guided the decision reached at each level, without more, is insufficient to demonstrate arbitrary action. see Matter of Katz v Bd. of Regents of University of State, 285 AD3d 1277, 1279 (3d Dept 2011). Of note, there is no allegation contradicting the PA Program Director's and the Provost's statements that they were not involved in the committees' processes and that they each reached their independent determination based only on the record.
Sanctions as an abuse of process.
It is uncontroverted that expulsion was a legitimate potential sanction under the College's disciplinary rules for the ethical violations that Petitioner committed. Petitioner challenges the appropriateness of the sanction. See Matter of Quercia v New York University, 41 AD3d 295 (1st Dept 2007).
In evaluating the appropriateness of nonacademic discipline under Article 78, courts may not disturb a college or university's imposed discipline unless it is "so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Pell v Bd. of Ed. Of Union Free Sch. Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester [*11]County, 34 NY2d 222, 233 (1974). An administrative penalty must be upheld unless it is so disproportionate to the offense as to be shocking to one's sense of fairness, thus constituting an abuse of discretion as a matter of law. Matter of Ellis v Mahon, 11 NY3d 754, 755 (2008); Matter of McGuinness v Waters, 209 AD3d 436 (1st Dept 2022); Storino v New York University, 193 AD3d 436 (1st Dept 2021); Matter of Bondalapati v Columbia University, 170 AD3d 489 (1st Dept 2019); Matter of Quercia v New York University, 41 AD3d 295 (1st Dept 2007); Matter of Fernandez v Columbia University, 16 AD3d 227 (1st Dept 2005); see Matter of VanHouten v Mount St. Mary College, 137 AD3d 1293 (2d Dept 2016); Matter of Ponichtera v State University of NY at Buffalo, supra.
Shocking to one's sense of fairness is, of course, a subjective standard. A result is shocking to one's sense of fairness if the sanction imposed is so grave in its impact on the individual subjected to it that it is disproportionate to the misconduct, incompetence, failure or turpitude of the individual, or to the harm or risk of harm to the agency or institution, or to the public generally visited or threatened by the derelictions of the individuals as a matter of law. Matter of Pell v. Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, supra.
Of critical importance here is the fact that this Court lacks any discretionary authority or interest of justice jurisdiction in reviewing the penalty imposed. Matter of Featherstone v Franco, 95 NY2d 550 (2000); Idahosa v Farmingdale State College, 97 AD3d 580 (2d Dept 2012). When a private school expels a student based on facts within its knowledge that justify the exercise of discretion, then a court may not review this decision and substitute its own judgment. Khaykin v Adelphi Academy of Brooklyn, 124 AD3d 781 (2d Dept 2015). So crucially, in this case, the Court is not allowed to simply substitute its judgment as to the correct measure of punishment for the decision appropriately reached by the College.
Petitioner now argues that, in light of the offense and its prompt remedy, the penalty of expulsion is too extreme. It is without doubt that the penalty of dismissal under the circumstances is very severe. Petitioner invested significant time, money, and emotion into attending and working to finish the PA Program, and the Court is extremely sympathetic. While the penalty of dismissal may not be the discipline that the Court would have imposed, under the law cited herein, the Court is simply without the authority to substitute its own penalty.
Based on the record, the Court cannot conclude that the expulsion of Petitioner by this private college was so disproportionate to Petitioner's ethical/professional offense as to shock one's sense of fairness. Here, Petitioner admitted breaching the standards of ethics set forth in the Student Handbook which included a clear warning of expulsion as a potential penalty for violation. Petitioner also failed to appear at the first appeal.
In addition, the experienced faculty members who reviewed Petitioner's case assessed her response and found that it demonstrated a lack of the necessary and expected understanding of the professional seriousness of the ethical issues being raised. Medicine is an important and exact science and demands a serious commitment to maintaining high ethical standards in all medical professions. Having completed a large portion of the PA Program, Petitioner's ethical and comprehension shortcomings as assessed by the faculty in the disciplinary proceedings were viewed by the committees, the PA Program Director, and the Provost as warranting dismissal, which was one of the permissible sanctions. The Court simply cannot conclude that this decision, as a matter of law, shocks the conscious. Matter of Ellis v Mahon, supra; Matter of McGuinness v Waters, supra; Storino v New York University, supra; Matter of Bondalapati, [*12]supra; Matter of Flores v New York University, 79 AD3d 502 (1st Dept 2010); Matter of Dequito v New School for General Studies, 68 AD3d 559 (1st Dept 2009); Matter of Quercia v New York University, supra; Matter of Fernandez v Columbia University, supra; see also, Matter of VanHouten v Mount St. Mary College, supra; Matter of Ponichtera v State University of NY at Buffalo, supra; Matter of Khaykin v Adelphi Academy of Brooklyn, 124 AD3d 781 (2d Dept 2015); Matter of Doe v Trustees of Union College, 195 AD3d 1216 (3d Dept 2021); Matter of Idahosa v Farmingdale State College, 97 AD3d 580 (2d Dept 2012).
Furthermore, even if the sanction of expulsion was inappropriate as a matter of law, Petitioner's remedy would be limited to another disciplinary hearing curing any defect found to exist from the first hearing process. Matter of Jacobson v Blaise, 157 AD3d 1072 (3d Dept 2018); Matter of Skorin-Kapov v State University of New York at Stony Brook, 281 AD2d 632 (2d Dept 2001); Gupta v Boyer, 55 AD2d 1024 (4th Dept 1977).
Finally, as for Petitioner's request for a declaration that the use of the acronym "PA-S" is unlawful, Petitioner fails to set forth any legal precedent or evidence demonstrating that: she has standing to seek such a declaration; the College's actions are illegal; or that such a finding would mandate a reversal of the disciplinary decision. As such the contention is rejected.
According, the part of the pleadings in which Petitioner seeks, in the Seventh and Eighth Causes of Action, an order granting declaratory and injunctive relief under CPLR Article 78 reinstating Petitioner in the PA Program, and declaring that the College's use of the acronym "PA-S" is unlawful is denied. Furthermore, the College's motion to dismiss the Seventh and Eighth Causes of Action is granted and the College's disciplinary finding is upheld. 
Respondents' Motion to Dismiss the Remaining Causes of Action under CPLR 3211(a)(1) and (7).
The Subsuming of the Remaining Causes of Action in the Article 78 Determination
Because the administrative decisions of educational institutions involve the exercise of highly specialized professional judgment and these institutions are, for the most part, better suited to make relatively final decisions concerning wholly internal matters, courts retain a restricted role in dealing with and reviewing controversies involving colleges and universities. In these cases, Article 78 proceedings are the appropriate vehicle because they ensure that the over-all integrity of the educational institution is maintained. Thus, an Article 78 proceeding is the route for judicial review of such matters, not a plenary action. Maas v Cornell University, supra; Diehl v St. John Fisher College, 278 AD2d 816 (4th Dept 2000); Meisner v Hamilton, Fulton, Montgomery Board of Cooperative Educational Services, 175 AD3d 1653 (3d Dept 2019).
Here, the College argues that Petitioner's remaining causes of action of Breach of Contract (first), Conspiracy to Deprive Civil Rights in Violation of 42 USC §1985 and §1986 and Interference with Contract (second), Prima Facie Tort and Restraint of Trade (third), Interference with Contractual Relations (fourth), Violation of NYC Human Rights Law (fifth); and Defamation (sixth) must be dismissed because they relate to academic or administrative decisions of the College, which are subject only to exclusive Article 78 review. Where the allegedly discriminatory acts are directly related to the academic or disciplinary determinations made by defendants, or to the procedures followed in reaching those determinations, they must be brought in an Article 78 proceeding, rather than a plenary action. see Gary v. New York University, 48 AD3d 235, 236 (1st Dept 2008). This contention shall be addressed under each cause of action.
Standard of Review
CPLR 3211(a)(1)
A cause of action may be dismissed under CPLR 3211 (a) (1) only where the documentary evidence utterly refutes the plaintiff's factual allegations, conclusively establishing a defense as a matter of law. Goshen v Mutual Life Ins. Co. of NY, 98 NY2d 314, 326 (2002); see Board of Managers of Aston Condominium v Building 389 LLC., 234 AD3d 540 (1st Dept 2025). In other words, the documents relied upon must definitely dispose of the claim. Art & Fashion Group Corp. v Cyclops Prod. Inc., 120 AD3d 436 (1st Dept 2014). Email correspondence can, in a proper case, suffice as documentary evidence for purposes of CPLR 3211 (a) (1). Id. Factual affidavits, however, do not constitute documentary evidence within the meaning of the statute. Id.; Flowers v 73rd Townhouse LLC, 99 AD3d 431, 431 (1st Dept 2012). 
CPLR 3211(a)(7)
Initially, the motion is directed to the sufficiency of the allegations contained within the complaint itself, unsupported by proof other than the challenged pleading. When the CPLR 3211 (a) (7) motion is directed exclusively at the sufficiency of the pleading, the sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail. Holder v Jacob, 231 AD3d 78 (1st Dept 2024); see Guggenheimer v Ginzburg, 43 NY2d 268, 275 (1977). It is the adequacy of the pleading itself, alone, that the court considers and if any reasonable view of the facts stated show plaintiff entitled to relief, the court's inquiry is complete and the complaint is sufficient. Holder v Jacob, supra; see Campaign for Fiscal Equity v State of New York, 86 NY2d 307, 318 (1995); see also Aristy-Farer v State of New York, 29 NY3d 501, 509 (2017).
Where, however, as here, "evidentiary material such as affidavits is submitted in support of the motion, the focus is no longer merely on the adequacy of the complaint's allegations; such evidence must conclusively establish a defense to plaintiff's claims as a matter of law". Holder v Jacob, supra; see Goldman v Metropolitan Life Ins. Co., 5 NY3d 561, 571 (2005); David D. Siegel & Patrick M. Connors, New York Practice § 265 [6th ed, Jan. 2024 update]. Hence it is a "well-established principle governing motion practice when seeking a CPLR 3211 dismissal" that a defendant can submit evidence such as affidavits or testimony in support of a CPLR 3211 (a) (7) motion attacking a well-pleaded cognizable claim. Holder v Jacob, supra; Basis Yield Alpha Fund [Master] v Goldman Sachs Group, Inc., 115 AD3d 128, 134 (1st Dept 2014). Furthermore, doing so changes the CPLR 3211 inquiry from whether the pleader has stated a cause of action to whether the pleader has a cause of action amenable to relief or whether the defendant has a complete defense to the claims and that such evidence must conclusively establish a defense to plaintiff's claims as a matter of law. Holder v Jacob, supra. Allegations consisting of bare legal conclusions, or allegations that are either inherently incredible or flatly contradicted by documentary evidence are not entitled to such consideration. Id.; Landmark Ventures, Inc. v InSightec, Ltd., 179 AD3d 493, 943 (1st Dept 2020).
With these legal principles in mind the court will review the remaining causes of action.
First (Breach of Contract) and Fourth (Interference with Contractual Relations) Causes of Action
As for the first and fourth causes of action based in contract, the causes of action are dismissed as subsumed in the Article 78 proceeding. At their essence, Petitioner seeks in the contract claims to once again challenge her dismissal from the PA Program. While there is a vague allegation that a "conspiracy" occurred during the disciplinary proceedings based upon protected characteristics, the causes of action, at the core, arise from the private college's decision to dismiss Petitioner from the PA Program as an available disciplinary sanction. As the causes of action are, in essence, a challenge to the decision to expel her, the claims are properly asserted and evaluated in the cause of action under Article 78. Consequently, Petitioner is only eligible for Article 78 relief, which is denied. Matter of Zanellli v Rich, 127 AD3d 774 (2d Dept 2015); Gary v New York Univ., 48 AD3d 235, 236 (1st Dept 2008); see Sarwar v New York College of Osteopathic Medicine of New York Institute of Technology, 150 AD3d 913 (2d Dept 2017); Meisner v Hamilton, Fulton, Montgomery Board of Cooperative Educational Services, 175 AD3d 1653 (3d Dept 2019). The proper vehicle to challenge the disciplinary decision was in the Article 78 cause of action and therefore Petitioner's first and fourth causes of action based in contract are dismissed.
In any event, Petitioner fails to set forth the required elements of a cause of action for breach of contract. While a student may sue a college for breach of implied contract, when analyzing such claims under a contract theory, the courts should look to see if the "university has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion," and, if so, "that procedure must be substantially observed." Tedeschi v Wagner College, 49 NY2d 652 (1980). New York courts have consistently stated that contractual claims by students against a college are extremely limited, and the terms of an implied contract should not be assumed. Maas v Cornell University, supra; Tedeschi v. Wagner College, supra. Accordingly, courts have limited implied contractual claims to enforcement of specific promises contained in the university's bulletins, circulars and regulations. Croce v St. Joseph's College of New York, 219 AD3d 693 (2d Dept 2023); Keefe v New York Law Sch., 71 AD3d 569 (1st Dept 2010).
Here, even assuming the existence of a contract based on the Student Handbook, for the reasons set forth above, Petitioner fails to set forth any basis for finding that the College breached its obligations thereunder. Furthermore, Petitioner also fails to allege that she fully performed under these policies and admits that she did not meet the ethical standards set forth in the alleged "contract" policy. See Ampower-US, LLC v WEG Transformers USA, LLC, 214 AD3d 1129 (3d Dept 2023). As such, the first and fourth causes of action are dismissed.
Second Cause of Action (Conspiracy to Deprive Petitioner of her Civil Rights in Violation of 42 U.S.C. §1985 and §1986, and Interference with Contract Based upon Race in violation of 42 U.S.C. §1981.
Of note, this cause of action, while supported by vague allegations of general discriminatory behavior by certain faculty in academic remediation and programming, is solely addressed to the discrimination that allegedly occurred during the disciplinary process that resulted in Petitioner's dismissal based on her actions with regards to the Recommendation Letter. Importantly, this case does not involve a larger class action claim based on general anti-Muslim or anti-Pakistani discriminatory practices by the College.
In addition, before addressing Petitioner's second cause of action, the Court must address [*13]Respondents' arguments regarding the "plausibility" of the allegations. It is true that Petitioner's federal causes of action under 42 USC. §§ 1981, 1985, and 1986, would be evaluated under a heighted plausibility pleading standard had they been brought in federal court. see Bell Atlantic Corp. v Twombly, 550 US 544 (2007); see also Ashcroft v Iqbal, 556 US 662 (2009). However, in this instant case, Petitioner elected to bring the federal claims in New York State Supreme Court. 
The Appellate Division, Second Department recently held in December 2024 that "[a]bsent a statutory heightened pleading requirement, New York courts apply the liberal 'notice pleading' standard of CPLR 3013 when construing the pleading sufficiency of federal causes of action, not federal pleading standards". Pressley v City of New York, 233 AD3d 932 (2d Dept 2024) [internal citations omitted]. This Court, of course, sits within the confines of the Appellate Division, First Department. However, the First Department has not explicitly ruled on this issue. So, this Court will follow the Second Department's precedent and evaluate Petitioner's allegations under New York's more lenient notice pleading standard.
In the Petition under this cause of action Petitioner alleges that:
"Upon information and belief, Defendants conspired to interfere with, violate, and refuse to safeguard, Plaintiff's Civil Rights, based upon her race, in violation of 42 U.S.C. §§ 1985 & 1986. For example, it appears that defendant Middleton conspired with others, including Defendants Yuen, Felton and Garofalo to orchestrate Plaintiff's dismissal from the PA Program and expulsion from [the College] based upon Plaintiff's race, religion and national origin, depriving her of her civil right to receive equal treatment at an institution, [the College] receiving federal funds. Defendants Middleton, Yuen and Felton conspired to deprive Plaintiff of a meaningful hearing on September 29, 2023, by failing to provide her with notice of the accusation against her being presented to the PA Program's PCRC. Defendants conspired to deny Plaintiff any in-person input to Defendant Middleton's and Defendant Yuen's hastily arranged October 5, 2023, meeting of the [APC]. CMSV terminated the contract with Plaintiff on account of her race, in violation of 42 U.S.C. § 1981. This conduct based upon Plaintiff's race has caused Plaintiff damages thereby".
Section 1985 and 1986
42 USC § 1985 creates a federal cause of action against persons who conspire to interfere with the civil rights of another. See 42 USC § 1985; Friends of Falun Gong v Pacific Cultural Enterprise, Inc., 288 F. Supp 2d 273 (E.D.N.Y.20223). Conspiracy is an essential element of a claim under 42 USC § 1985. Id. To state a claim under Section 1985, a plaintiff must allege: "(1) that two or more persons engaged in a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." See, e.g., Thomas v Roach, 165 F.3d 137, 146 (2d Cir. 1999). Section 1986 extends liability to certain individuals that neglect to prevent such action.
Here, Petitioner alleges that respondents Garofalo, Middleton and Yuen were co-conspirators and took several allegedly "wrongful" actions. As set forth in the analysis above, however, the alleged "wrongful" actions taken by the three were each in full accordance with the [*14]admittedly rigid disciplinary procedures of the College. The alleged discriminatory acts therefore directly relate to the disciplinary determination made by the College which involved the named three faculty members plus other faculty, the PA Program Director, and the Provost. Hence the claim alleged under 42 USC §1985 and §1986 is subsumed in the Article 78 decision and is dismissed.
In any event, the pleading is insufficient to state a cause of action. Based on the admitted facts and documentation, all of the required disciplinary procedures were followed by the alleged conspirators with regards to hearings, notice of hearings, the management of Petitioner's default in appearing at the appeal hearing and in all other matters. Other than identifying these three individuals, Petitioner fails to set forth any facts to support the claim of a conspiracy by wrongful action between the College and the three respondents to improperly deprive her of access to the PA Program, purportedly based upon her religion or national origin. 
While Petitioner pleads that Middleton possessed discriminatory animus, Petitioner fails to indicate how any other respondents conspired with Middleton during the PCRC meeting, the APC meeting, the PA Director Appeal, or the Provost Appeal. In fact, it is not clear, beyond a vague conclusory allegation, many on "information and belief", how the three named persons influenced, based on bias, the determination made by numerous other expert facility members, the PA Program Director, and the Provost. Of note, the submitted affidavits contradict the vague allegation of bias. Nor does Petitioner allege that a group of non-minority students that committed the same or similar violations were treated differently. See Brown v. City of Oneonta, New York, 221 F.3d 329 (2d Cir. 2000). As such, Petitioner fails to plead facts and provide any proof that there was a meeting of the minds concerning the alleged discrimination, thus requiring dismissal. See e.g. Webb v Goord, 340 F.3d 105, 110 (2d Cir. 2003).
Section 1981
Petitioner also asserts in the Second Cause of Action that the College discriminated against her based on her purported race in violation of 42 USC Section 1981. Section 1981 protects the rights of all persons within the jurisdiction of the United States to make and enforce contracts without respect to race only. Domino's Pizza, Inc. v McDonald, 546 U.S. 470, 474-75 (2006). Thus, to establish a claim under Section 1981, a petitioner must prove that the respondents intended to discriminate on the basis of race and that such racial discrimination blocked the creation of a contractual relationship or impaired an existing contractual relationship. Id. at 746; see Bishop v Best Buy Co., No. 08 Civ. 8427 (LBS), 2010 WL 4159566 (S.D.NY Oct. 13, 2010).
For the reasons set forth above, this claim is dismissed as subsumed in the Article 78 determination. In any event, Petitioner fails to identify her race or to allege that any decisions were based on her race, and as Section 1981 does not protect against alleged national origin discrimination, the claim must be dismissed. See, e.g., Village of Freeport v Barrella, 814 F.3d 594, 606 (2d Cir. 2016) ("Section 1981 prohibits discrimination on the basis of race but not on the basis of national origin."). Moreover, as determined herein, in conducting the disciplinary proceedings, the College followed its own procedures and therefore did not breach any contract but fulfilled its oblations thereunder. see Bishop v. Best Buy Co., No. 08 Civ. 8427 (LBS), 2010 WL 4159566 (S.D.NY Oct. 13, 2010). The cause of action is therefore dismissed.
Fifth Cause of Action (NYCHRL)
In the Fifth Cause of Action, Plaintiff brings claims under Section 8-107(4) of the NYCHRL, for discrimination on the basis of her religion and national origin. Section 8-107(4)(f) provides that:
"[t]he provisions of this subdivision as they relate to unlawful discriminatory practices by educational institutions shall not apply to matters that are strictly educational or pedagogic in nature."
Here, Petitioner's discrimination claim is entirely founded on the College's procedures for her disciplinary hearings and appeals. The claim therefore falls squarely within this carved-out in the statute for educational institutions and is dismissed.
Even assuming the College's decision to expel Petitioner was covered under this statute, for the reasons set forth herein, the claims are dismissed as subsumed in the Article 78. Furthermore, the conclusory allegations are insufficient to state a claim for discrimination under the provision. Etienne v MTA New York City Transit Authority, 223 AD3d 612 (1st Dept 2024); Pelepelin v City of NY, 189 AD3d 450 (1st Dept 2020); see Melman v Montefiore Med. Ctr., 98 AD3d 107, 125 (1st Dept 2012). The cause of action must be dismissed.
Third Cause of Action- Prima Facie Tort Claim
The cause of action of Prima Facie Tort is dismissed because the allegations relate to the College's administrative and academic decision, and were only appropriately challenged through the Article 78 cause of action. Meisner v Hamilton, Fulton, Montgomery Bd. of Coop. Educ. Servs., 175 AD3d 1653, 1656 (3d Dept 2019).
In any event, Petitioner fails to state a cause of action. To state a cause of action for prima facie tort, a plaintiff must allege: (1) intentional infliction of harm; (2) which results in special damages; (3) without any excuse or justification; (4) by an act or series of acts which would otherwise be lawful. Freihofer v Hearst Corp., 65 NY2d 135, 142—143 (1985). Moreover, there can be no recovery under this theory unless malevolence is the sole motive for defendant's otherwise lawful act or, in other words, unless defendant acts from disinterested malevolence. Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 333 (1983). Plaintiff must also sustain a "specific and measurable loss," which requires an allegation of special damages. Fernandez v Fernandez, 216 AD3d 743, 746 (2d Dept 2023).
The cause of action for prima facie tort alleges that respondent Bongiovanni threatened report Petitioner's improper use of PA credentials outside of the university. Notably, the Petition is devoid of any factual allegation that Bongiovanni or any of the other respondents actually followed through on this purported threat. Petitioner alleges that the respondents' actions were intended to "stifle and squash any hope Plaintiff may have had for continuing a PA education." However, there is no claim that any Respondents took the alleged actions or that the actions actually caused Petitioner to suffer a measurable economic loss - a necessary element of prima facie tort. See Diorio v Ossining Union Free School Dist., 96 AD3d 710, 712 (2d Dept 2012). The cause of action is therefore dismissed. Siller v Third Brevoort Corp., 145 AD3d 595, 596 (1st Dept 2016); Banschick v Johnson, 222 AD3d 608, 610 (2d Dept 2023).
Of note, the cause of action for prima facie tort should not become a catch-all alternative for every cause of action which cannot stand on its own legs. Berland v Chi, 142 AD3d 1121 (2d Dept 2016). In any event, Petitioner fails to set forth or prove the required specific special [*15]damages. See DeMartino v Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP., 189 AD3d 774 (2d Dept 2020); Lancaster v Town of E. Hampton, 54 AD3d 906 (2d Dept 2008).
Restraint of trade- this claim is withdrawn.
Sixth Causes of Action- Defamation
Because this claim relates to the College's administrative and academic decisions, it can only be challenged through the Article 78 cause of action and is dismissed. See Meisner v Hamilton, Fulton, Montgomery Bd. of Coop. Educ. Servs., 175 AD3d 1653, 1656 (3rd Dept 2019).
Moreover, Petitioner's defamation claim is correctly dismissed because the subject statements were true, had not been published to any persons outside the university, and were protected by a qualified common interest privilege. Bondalapati v Columbia University, 170 AD3d 489 (1st Dept 2019). Petitioner's allegations of malice amount to little more than "mere surmise and conjecture" and are therefore insufficient to overcome this privilege. Id.; Ashby v ALM Media, LLC, 110 AD3d 459 (1st Dept 2013). The final cause of action is therefore dismissed.
Accordingly, while it is, unfortunately, a severe result, this Court finds that it is without authority to grant Petitioner the relief that she seeks in this action. The motion to dismiss the Hybrid Petition/ Complaint is granted.
The Court has considered the additional contentions of the parties not specifically addressed herein. To the extent that any relief requested by the parties was not addressed by the Court, it is hereby denied.
Accordingly, it is hereby
ORDERED that petitioner-plaintiff ROHMA MIRZA'S hybrid petition/complaint and motion (Mot. Seq. 1) seeking, pursuant to Article 78 of the CPLR, a judgment and order: vacating respondent COLLEGE OF MOUNT SAINT VINCENT BOARD OF TRUSTEE'S ("the College's") decision expelling Petitioner from the Physician Assistant Program ("the PA Program") as being arbitrary, capricious, and abuse of discretion and in violation of law; issuing an order of mandamus/injunction directing that Petitioner be reinstated to the PA Program; issuing an injunction requiring that the College "restore the status quo ante as of the day prior to" the dismissal; directing appropriate ancillary relief to make Petitioner whole for her expulsion from the PA Program; and granting Petitioner an award of costs and attorneys' fees and other equitable relief is DENIED; and it is further
ORDERED that the motion of the respondents THE COLLEGE OF MOUNT ST VINCENT BOARD OF TRUSTEES, SUSAN R. BURNS, President, LYNNE A. BONGIOVANNI, PHD, DAVID LICHTENSTEIN, M.D., ANTHONY J. GAROFALO, SONDRA MIDDLETON, and TSUI YUEN [Mot. Seq. 2], made pursuant to CPLR 3211(a)(1) and 3211 (a)(7), seeking an order dismissing the hybrid Article 78 Petition/Complaint is GRANTED; and it is further
ORDERED that the Clerk shall entering judgment in favor of Respondents dismissing the petition/complaint; and it is further
ORDERED that the Clerk shall mark the motions (Mot. Seqs. 1,2) decided and the action disposed in all court records.
This constitutes the Decision and Order of the Court.
Dated: March 18, 2025
HON. VERONICA G. HUMMEL, A.S.C.J.

Footnotes

Footnote 1: "Program Overview: The Physician Assistant Program is an intense 28-month program. The curriculum is sequenced to afford each student an understanding of the medical sciences and their application to clinical practice. The first 16 months of study are devoted to didactic work in the basic sciences, medicine, behavioral sciences, and research methodologies. Students will be introduced to the clinical experience at selected times during the didactic year experience as is necessary to enhance their understanding of clinical realm and to better prepare the students for what lies ahead during their clinical year of study. The next 12 months constitute the clinical phase of the PA Program and include rotations at clinical sites such as hospitals, clinics, and private practices". (The Student Handbook).

Footnote 2: In the petition, Petitioner alleges that Felton thereafter resigned in protest to the dismissal recommendation. In contrast, the College alleges that Felton strongly supported the decision to expel the student. No affidavit by Felton is submitted with the motion.

Footnote 3: Respondent Lichtenstein is the medical director of the PA Program.

Footnote 4: By court submission date January 15, 2025, Petitioner limits the Article 78 requested review to "whether [the] determination was in violation of lawful procedure [contractual due process], . . . arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed [expulsion] . . . ."